## Illinois Central Railroad Company v. Martin Creighton.

1. INSTRUCTIONS—*Ignoring the Issues.*—An instruction which ignores the issue on trial is erroneous.

2. INSTRUCTIONS—*Assessment of Damages.*—In a case where exemplary damages can not be given, it is error to instruct the jury to assess plaintiff's damages at such a sum as the jury think him entitled to under the evidence. The damages should have been confined to such as he had sustained.

3. ABSTRACTS—*Absence of References to the Record.*—An abstract which contains no marginal references to the pages of the record is imperfect, and no costs will be taxed for it; but such imperfection will not justify an affirmance of the judgment.

Memorandum.—Action for personal injuries. Appeal from the Circuit Court of Alexander County; the Hon. ALONZO K. VICKERS, Judge, presiding. Heard in this court at the August term, 1893. Reversed and remanded. Opinion filed March 23, 1894.

The statement of facts is contained in the opinion of the court.

GREEN & GILBERT, attorneys for appellant.

BOYER & BUTLER, attorneys for appellee.

MR. JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

Engine No. 753 was in use in appellant's yards at Cairo. On the night of March 10, 1891, the cylinder cocks on the right side and the gearing or rigging attached thereto were broken off. These cylinder cocks were furnished with valves for the purpose of permitting the escape of an excessive amount of steam accumulating in the cylinder, or of water collecting there from the condensation of steam. The valves were opened or closed by a rod handled by the engineer from his cab.

It appears also that the throttle-valve was worn and imperfect, and could not be closed so as to prevent altogether the escape of steam into the cylinder.

On the 11th of March appellee notified the proper agent of the company, whose business it was to repair engines, that the engine was out of order, and obtained a promise that it would be repaired that night. This promise was disregarded. On the next day appellee obtained from the same agent of the company a similar promise, which was also disregarded. On the 13th appellee went to work with the defective engine, without further promise of repairs. About 9:30 A. M., he was ordered to get out of the way of a passenger train which was to pass within a few minutes. At this point there was a "dead head" track nearly filled with loaded and empty cars, and connected at each end with the main track. In accordance with the direction of his superior, appellee ran his engine on the "dead head" track, where there was barely room for him to clear the main track. A slight backward movement would have thrown the most distant car from the "dead head" track upon the main track. Appellee set the lever in front of the center, inasmuch as he claimed that this engine would not "stand on the center." The engine began to move forward. The passenger train was at hand and a collision was imminent. Appellee sought to reverse the lever. He failed.

He tugged at it and called on the fireman for help.  The two, with the exercise of almost superhuman strength, succeeded, and the engine was stopped in time to prevent a wreck.  Appellee claims that he was ruptured, and that he was otherwise injured in his great struggle to stop the engine.  He recovered a judgment in the court below for $2,000.

Among appellant's defenses was appellee's alleged contributory negligence.  It was insisted that appellee, on the 11th of March, plugged the holes in the cylinder with iron bolts, and that this prevented the escape of steam from the cylinder, and caused the difficulty in moving the lever at the time of the accident.  Appellee answered that it was necessary to plug the holes because the escape of steam from them, if left open, would have prevented him from seeing signals.  He also contended that the use of the bolts for plugs. was known to, and acquiesced in by appellant.  The latter proposition was denied by appellant.  To the former proposition it was said that the escaping steam would not have prevented appellee from seeing signals, but that, in any event, it was appellee's duty, on side-tracking the engine, to remove the plugs, or block the wheels, or call on the fireman to set the hand-brake.  Appellee responded that he dared not leave the engine to remove the plugs or block the wheels, and that it was the duty of the fireman to set the hand-brake without direction from the engineer.  There was evidence tending to sustain each of the foregoing propositions, and the jury should have been accurately instructed as to the effect of appellee's alleged contributory negligence.

· At the request of appellee the court gave to the jury the following instruction:

" Even though you should believe from the evidence that the defendant did furnish to the plaintiff an engine or locomotive to be used by the plaintiff in the course of his employment, and even though you should further believe from the evidence that the plaintiff knew the said engine or locomotive was out of repair and was unsound and unsafe a

short time before the alleged injuries of the plaintiff, yet if
you further find from the weight of the evidence that a
short time before the alleged injuries of the plaintiff the de-
fendant had promised the plaintiff to repair the said engine
or locomotive and to put the same in a safe, sound and suit-
able condition for use, and that the plaintiff relied upon
such promise, and pursuant to such promise, continued to use
the said engine from that time until the alleged injury, and
if you further find from the evidence that the plaintiff did
not keep such promise, and that the defendant received the
injuries alleged in the declaration in consequence of the un-
safe, unsound and unsuitable condition of said engine or
locomotive, then and in such case, if you further find from
the weight of the testimony that the defendant was at the
time of such alleged injuries exercising due care and caution
for his own safety, you should find for the plaintiff, and
assess his damages at such sum as you think him entitled to
under the evidence, not exceeding $15,000."

Waiving all consideration of the misuse and interchange
of the words plaintiff and defendant in the above instruction,
which is copied from the record, it will be observed that the
issue made by the evidence that appellee caused his injury
by his own negligence in plugging the holes in the cylinder,
is ignored altogether by the instruction. The due care re-
quired of appellee relates, in express terms, to the " time of
such alleged injuries." He might have used extraordinary
care when he found his engine moving, and yet the difficulty
in reversing the lever might have resulted from negligence
in plugging the holes two days before. Under this instruc-
tion the jury could have found for appellee while believing
that he had been guilty of gross negligence in plugging the
holes with iron bolts, and that such negligence was the
proximate cause of the injury. This instruction should not
have been given.

Five of the instructions given at the request of appellee,
including the one above quoted, end with this clause, or
one substantially the same: "And assess his (plaintiff's)
damages at such sum as you think him entitled to under
the evidence, not exceeding $15,000."

Ordinarily, it is not reversible error to instruct a jury that they should not assess the damages at more than the amount claimed in the *ad damnum* clause of the declaration, yet the practice of giving such instructions is not approved by the Supreme Court. Calumet Iron and Steel Co. v. Martin, 115 Ill. 358. But the error in the five instructions under consideration, is the direction to assess appellee's damages at such a sum as the jury think him entitled to, under the evidence. This might be proper in a case calling for exemplary damages. But such a case was not on trial, and the damages should have been confined to such as appellee had sustained. Keightlinger v. Egan, 65 Ill. 235; Waldron et al. v. Marcier, 82 Id. 550; James et al. v. Johnson, 12 Bradw. 286; McGinnis v. Beeven, 16 Id. 354.

But it is urged that the judgment should be affirmed, on the ground that appellant has not filed abstracts, such as are required by the rules of this court. The imperfection alluded to, is the omission of marginal references to the pages of the record. We think the authorities referred to, do not go to the extent of requiring an affirmance of the judgment because of this imperfection. An abstract which is a mere index, is no abstract, and when such a paper is filed, the judgment should be affirmed under the rule for failure to file abstracts. So if the abstract does not set forth such parts of the record as are relied upon to show error, those parts of the record will not be reviewed. If the refused instructions only are abstracted, the court may infer that similar instructions were given, whereby any error in the refusal of instructions, was cured. In such case, the imperfections of the abstract, which fails to make error appear, may result in the affirmance of the judgment; the affirmance is not on the ground that no abstract whatever has been filed, but on the ground that the court will not search the record for error which the appellant declines to make manifest by his abstract.

There is a rule of this court, however, which has a direct bearing on this question. It is the twenty-second. It is there ordered, that upon printed abstracts being furnished,

in conformity to the rules of this court, certain costs shall be taxed by the clerk against the unsuccessful party, and in favor of the successful party, furnishing such abstracts. The abstracts in this case not being in conformity with the rules of this court, no costs or printer's fee therefor, will be allowed or taxed in favor of appellant.

Such of the errors not mentioned in this opinion as are well assigned, will doubtless be avoided on another trial, without direction from this court.    ·

For the errors indicated, the judgment is reversed and the cause remanded.