DeWitt C. Heston *et al.*

*v.*

Mary R. Neathammer *et al.*

*Opinion filed June 17, 1899.*

Juries—*when misconduct of bailiff is ground for setting aside verdict.* That the bailiff in charge of a jury in a will contest remained in the jury room during the deliberations, answered questions and threatened to report and have fined a juror who declined to vote, is such misconduct as vitiates the verdict, where the evidence is close and the correctness of the verdict doubtful.

Appeal from the Circuit Court of Bond county; the Hon. Benjamin R. Burroughs, Judge, presiding.

Lane & Cooper, for appellants.

VanHoorebeke & Louden, for appellees.

Mr. Justice Carter delivered the opinion of the court:

Under a bill in chancery brought to contest the validity of the will of John H. Heston, deceased, the sole question submitted to the jury for their decision was, was the said John H. Heston of sound mind and memory when he executed said will? At the first and second trials the respective juries sitting in the cause disagreed, but on the third trial the jury answered the question in the negative, and the court, after overruling the motion for a new trial, entered a decree upon the verdict and set aside the probate of the will. This appeal is prosecuted by the proponents to reverse that decree.

The will was made July 25, 1895, when the testator was eighty-four years of age. He died of paralysis on April 19, 1896, and the will was admitted to probate a few days later.

The only errors assigned which we deem it important to consider are, first, that the verdict and the decree are against the weight and preponderance of the evidence, and that there is no sufficient evidence in the record to

sustain the finding; and second, that the court erred in not granting the motion for a new trial because of the misconduct of the officer in charge of the jury.

A great many witnesses were examined on each side, and there was a contrariety of testimony relating to the testamentary capacity of the testator after he was stricken with paralysis, in 1894. There was some testimony that he had previously suffered from the same affliction, but no attempt was made to prove that there was any mental impairment prior to the attack in 1894. He was a man of more than ordinary mental and physical vigor and activity, and it is clear from the evidence that while he never fully recovered from the attack last mentioned but died from a stroke of the same disease in 1896, yet at the time the will was made, in 1895, he had greatly improved, and was able to, and did, attend to a part of his ordinary business. He had previously given over to two of his sons the management of his farms, but was then able to, and did, go alone to the city of Greenville, a distance of seven miles, sometimes on horseback and sometimes in his buggy, where he bought, as he had previously, such supplies as he needed, and where he met and conversed intelligently with his friends and acquaintances, many of whom testified as to his soundness of mind at that time. The evidence shows that the right side of his body, including his vocal organs, was to some extent paralyzed and that he could not speak distinctly; that his memory was somewhat impaired and that he sometimes failed to remember some of his neighbors and acquaintances until he was told who they were, and that he often said that he was half dead,—that one side of him was dead; still, the evidence shows that he conversed intelligently, and tends to prove that he had full testamentary capacity in July, 1895, when the will was made. The three attesting witnesses, one of whom was the solicitor who drew the will as directed by the testator, gave full testimony to this point, and were cor-

roborated by other witnesses who saw and conversed with him at or about the same time. He had made a will in 1893, which, so far as it affected the contestants, was substantially the same as the one here in question, the principal difference being certain changes in the gifts to the other beneficiaries. He had had a quarrel with one of the contestants,—a son; but whether that was the cause of the disinherison of that son or not, it cannot be denied that he had the lawful right to prefer others of his children in the final disposition of his property.

But we are relieved of the necessity of deciding the case upon the question of the weight of the evidence by the second error assigned,—that is, the misconduct of the bailiff in charge of the jury. The evidence taken on the motion for a new trial shows that this officer remained with the jury in the jury room all night and while they were considering the case and deliberating upon their verdict; that during this time he talked with different jurors and answered questions which they propounded to him about the case, as we understand the showing made, and that when one juror declined to vote on the question before them until after further consideration, he (the bailiff) threatened the juror that if he did not vote he would report him to the court and have him fined. This officer was in charge of the jury in a previous trial of the same case, and then offered to bet (a mere trifle, however,) with counsel for the proponents that he would not get a verdict for his clients. True, he swore that he had no interest in the case, and the juror he had threatened to have fined for not voting also swore he was not influenced in his verdict by the bailiff; but we are of the opinion that the misconduct of this officer while in the jury room when the jury were deliberating upon their verdict was of so gross a character as not only to merit severe punishment but also to vitiate the verdict, especially in a case where, as here, it is a matter of grave doubt whether or not that verdict should be sustained, under the evidence, upon the

main question at issue. This court has not adopted the strict rule enforced in many States "that the presence of an officer during the deliberation of the jury is such an irregularity and invasion of the right of trial by a jury as to absolutely vitiate the verdict in all cases, without regard to whether any improper influences were actually exerted over the jury or not," but we have held that "such a breach of duty on the part of the officer is a grave irregularity, which will or will not have the effect of vitiating the verdict, depending upon the circumstances of each particular case." (*Gainey* v. *People*, 97 Ill. 270.) This was said in a capital case, where greater strictness is required to keep the jury free from improper influence of every kind, but in *Mobile and Ohio Railroad Co.* v. *Davis*, 130 Ill. 146, the judgment was reversed because of improper association with a juror by counsel for the prevailing party. (See, also, *Martin* v. *Morelock*, 32 Ill. 485.) While there is a plain difference between such misconduct of counsel and the misconduct of the officer in charge of the jury, either may be of such a character as to vitiate the verdict. (12 Ency. of Pl. & Pr. 542.) Ordinarily such question may well be left to the sound discretion of the trial judge, and his discretion should not be interfered with unless it has been abused or has not been properly exercised, but it is the duty of this court, to which litigants may finally resort, to interfere in such a case and to see to it that the rights of parties are not prejudiced by the misconduct of officers in charge of juries or by the misconduct of parties or their attorneys. This officer admitted that he remained in the jury room with the jury during their deliberations and answered questions which they asked him, which we must infer, from what was stated, related to the case; that he told a juror who declined to vote that if he did not vote he would report him to the court and have him fined. It may well be that this juror was not ready to vote upon his verdict; that he desired further time to consult with his fellow-jurors or to read

and consider the instructions of the court, and that without this interference of the officer a different result might have been reached. But whether so or not, the officer's conduct was a gross invasion of the duties and privileges of the jury and of the rights of the parties. Jurors unaccustomed to the proceedings in courts, and without full knowledge of the extent of their rights and duties or those of the officer in charge, would be very apt to attach undue importance to the statements and acts of such officer and attribute to him superior knowledge and authority, even where he had none. They should not be subjected to such improper influence.

For the reasons given we are of the opinion the court below erred in not sustaining the motion for a new trial. The decree is reversed and the cause is remanded.

*Reversed and remanded.*