THE CHICAGO CITY RAILWAY COMPANY

*v.*

PATRICK H. O'DONNELL, Admr.

208 267
210 ⁸304
208 267
d212 ⁴376

*Opinion filed February 17, 1904—Rehearing petition stricken April 7, 1904.*

1. NEGLIGENCE—*what is not negligence as a matter of law.* It is a question of fact—not of law—whether a person driving on one of two parallel street car tracks was negligent in driving upon the other track at a street crossing when an approaching car was but two hundred feet away, there being nothing to show that he knew the car was approaching when he turned out from behind the covered wagon he was following.

2. SAME—*court may define "ordinary care," as applied to either of the parties.* In a personal injury case, where the defendant urges contributory negligence as a substantive defense, it is proper for the court to define to the jury the meaning of the term "ordinary care," as applied to the conduct of plaintiff's intestate.

3. SAME—*when instruction as to ordinary care is not too narrow.* An instruction holding that ordinary care is the degree of care which an ordinarily prudent person would exercise, "situated as the deceased was * * * before and at the time of the injury," is not too narrow, and does not assume that an ordinarily prudent person would have placed himself in the same situation, where the entire occurrence occupied but two or three minutes. (*North Chicago Street Railroad Co. v. Cossar,* 203 Ill. 608, distinguished.)

4. INSTRUCTIONS—*when instruction should not be refused.* An instruction which submits the question as one of fact whether plaintiff's intestate should have looked for the car before turning on to the track and whether he did look, and then states if he should have looked and did not do so, and was injured in consequence, the jury should find the defendant not guilty, should be given, where the issue is material and no other specific instruction covers the subject.

5. SAME—*when the jury may be instructed as to what they must find to render a verdict of guilty.* Where the jury, so far as plaintiff's instructions are concerned, are left to determine for themselves what actionable negligence is charged in the declaration, the defendant is entitled to have the jury fairly informed what negligence was charged and what acts or omission of the defendant must be found to authorize a verdict of guilty.

6. SAME—*when refusal to pass upon instruction is not prejudicial error.* Refusal to pass upon an instruction because it exceeds the number limited by the court is not prejudicial error, where its material parts are covered by the given instructions.

7. SAME—*judge cannot arbitrarily fix number of instructions.* The trial judge cannot arbitrarily fix the number of instructions which

shall be presented by counsel of the respective parties or passed upon by the court.

8. REHEARINGS—*re-argument of case in a petition for rehearing condemned.* A petition for rehearing any portion of which is a re-argument of the cause violates practice rule 30, and will be immediately stricken from the files by the court of its own motion.

*Chicago City Railway Co.* v. *O'Donnell,* 108 Ill. App. 385, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

This is an appeal from a judgment of the Appellate Court affirming a judgment for $2500 entered upon a verdict rendered by a jury in the superior court of Cook county against appellant, in an action on the case prosecuted to recover damages on account of the death of John White.

The declaration consisted of one count, and alleged that the defendant, through its certain servant then and there in charge of one of its street cars then and there being operated upon and along said railway upon Halsted street in a northerly direction towards and past Forty-second street, so recklessly, carelessly and negligently ran and drove the said street car at such a high and dangerous rate of speed, and without maintaining a proper lookout, and without giving suitable warning of the approach of said car, that as a result and consequence thereof said car then and there ran against and struck said wagon, etc. A plea of not guilty was filed.

The evidence discloses that at the time of the accident deceased was seventy-four years of age and in the employ of a lumber company as a sort of errand man, and on the day of the accident was driving a one-horse carpenter wagon belonging to his employer. He had delivered some lumber and was driving back towards the lumber company's office, south on Halsted street, and immediately before the accident was following a covered

beer wagon. Halsted street runs north and south. Appellant had two street car tracks along Halsted street, the west line being called the south-bound track and the east line the north-bound track. The beer wagon which deceased was following was going down the south-bound track very slowly, and about the time Forty-second street was reached the deceased pulled his horse out on to the north-bound track and either started to go around the wagon he was following or to turn east on Forty-second street, there being a conflict in the evidence as to what he was trying to do, but the evidence shows that about the time he had pulled over on to the north-bound track he pulled back towards the south-bound track, and his wagon was struck by an electric car coming towards him on the north-bound track. White fell from his wagon and died a short time afterwards. Forty-second street intersects Halsted street on the east side but does not extend west beyond Halsted street, the stock yards being to the west.

The errors urged are the failure of the court to direct a verdict for the appellant; the giving and refusing of instructions; limiting the number of instructions to be given and passed upon by the court, and alleged misconduct of the attorney for appellee in his argument to the jury.

WILLIAM J. HYNES, JAMES W. DUNCAN, and C. LEROY BROWN, (MASON B. STARRING, of counsel,) for appellant.

JAMES C. McSHANE, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

*First*—It is urged that the court should have directed a verdict for appellant because White, plaintiff's intestate, was guilty of contributory negligence as a matter of law. It is contended that there is no evidence that the deceased used ordinary care for his own safety, and that the evidence, taken in the most favorable light to

appellee, does not tend to show that the deceased did use ordinary care, but, on the contrary, shows that the deceased's injury resulted from his own negligence. Appellant concedes that it is generally a question of fact whether or not a given line of conduct amounts to the exercise of ordinary care, but takes the position that it is equally well settled that where there is no conflict in the evidence, and where it can be fairly seen the injury was the result of the negligence of the party injured, the question becomes one of law, and in such case the court should instruct the jury to find for the defendant. In this position appellant insists it is supported by *Beidler* v. *Branshaw*, 200 Ill. 425, *North Chicago Street Railroad Co.* v. *Cossar*, 203 id. 608, and in other cases cited in its brief.

The accident occurred in the morning. The sun was shining, but there was some mist. Appellee's contention is, that when the deceased reached the north boundary of Forty-second street he turned his horse in an easterly course as if to cross Halsted street and go east along Forty-second street, but that there was on the east line of Halsted street another beer wagon loaded with barrel beer that obstructed his way, and seeing the approaching car of appellant coming from the south, and north bound, the deceased, in order to avoid a collision, turned his horse back towards the west to pass the car on the west side, but that the west track, which was only about five feet from the east track, was occupied, and the speed of the car was so great that before he could reach a place of safety the collision took place. Appellant's contention is, that the deceased undertook to pass the wagon loaded with bottled beer, which he had followed on the south-bound track, that was immediately in front of him, and pulled out at Forty-second street for that purpose; that the street, except as to the wagon going south along the west track, was free from obstructions, and that the deceased, in the exercise of ordinary care, should have seen the approaching car and have refrained from turn-

ing out on to or near to the east track until the car had passed.

There is some conflict in the evidence as to where the deceased did leave the west track,—whether at the north boundary or north curb of Forty-second street, or about the middle of Forty-second street. Witnesses for appellee testified that the deceased left the track at the north boundary or at the curb of Forty-second street, and that the collision took place about the middle of the street, while other witnesses testified that the deceased left the west track about the middle of the street and that the collision took place near the south curb. There is no conflict in the evidence but that the car, when the deceased did pull into the street, was between one hundred and two hundred feet south of him. There is a conflict in the evidence as to the speed of the car, but there is testimony tending to show that the speed of the car was about twelve miles an hour when the collision took place. In considering this question we are bound to take the testimony most favorable to appellee. The evidence most favorable to him tends to show that the deceased turned out of the west track at the north boundary of Forty-second street, and that at that time the car was two hundred feet away and was traveling at the rate of twelve miles an hour, and that its speed was not perceptibly slackened until almost the moment of the collision. There is also evidence tending to show that the bell was not rung or gong sounded, and while there is evidence that shows that the motorman, and perhaps others, by calling to and by gesticulation sought to warn the deceased, there is no evidence that he was conscious of such warning. The evidence as to what course the deceased intended to pursue at the time he did pull out of the west track is only inferential, there being no evidence showing where he was going or what for. His place of work was at 4824 Halsted street, or a little more than six blocks directly south of where he received his injuries, and at that time

he was going south towards his headquarters, with his wagon empty.

We have for several years denied the contention that the failure to look and listen when approaching a railroad crossing was, as a matter of. law, negligence, and have in recent years uniformly held that whether such failure was negligence was a question of fact, to be determined from all the facts and circumstances in the case. If, then, it was not negligence, as a matter of law, for the deceased to have changed his course at the street crossing and have turned out toward or upon the east track without looking and listening for a north-bound car, we are unable to say that, as a matter of law, the deceased was guilty of negligence in doing so when it appears that the car was two hundred feet away from him, approaching a street crossing, and in the absence of evidence that he had any knowledge that such car was approaching. Appellant puts the question thus: "The sole question then arises, was his conduct in turning to the left upon the track, where he might come face to face with an approaching car, contributory negligence?" and we answer, "As a matter of law, no; as a matter of fact, it may have been." But to say that in a city, at the crossings of streets, every person in a conveyance who may veer from his course is guilty of negligence or want of ordinary care because he may come face to face with an approaching car and may incur an injury, is to say that, as a matter of law, every person driving along a street must take one course and not deviate from it, at the risk of receiving injury for which he shall have no compensation under any circumstances. The beer wagon that was in front of the deceased when driving down the west track continued in its course, and when the injury occurred the two wagons were practically side by side, and whether it was the duty of the deceased, in the exercise of ordinary care, to have seen the approaching car two hundred feet away at or before

the time he pulled out of the west track, and have apprehended the danger of a collision and have remained on the west track or to have endeavored to have gone on east, down Forty-second street, or turned back into the west track behind the wagon he had been following, or whether he might not, in the exercise of ordinary care, rely upon appellant so keeping its car in control in approaching the street crossing, and in the two hundred feet it had to travel, that the same might be easily and safely stopped and collision avoided, were questions of fact, which we think were properly referable to the jury. Appellant concedes that the evidence tends to show negligence on its part. It was not error to refuse to direct a verdict of not guilty.

*Second*—Complaint is made of appellee's instruction No. 20. The instruction reads:

"The court instructs the jury that ordinary care, as mentioned in these instructions, is the degree of care which an ordinarily prudent person situated as the deceased was, as shown by the evidence, before and at the time of the injury, would usually exercise for his own safety."

It is said of this instruction that it confines the definition of ordinary care to the plaintiff's intestate, and as other instructions referred to the care of appellant as well, the definition should have been broad enough to include both. It was not improper for the court to define to the jury the meaning of the term "ordinary care" as applied to the conduct of either of the parties. Appellant was urging contributory negligence as a substantive defense, and appellee was entitled to an instruction as to the line of conduct required of the deceased to show care on his part.

The greater insistence of appellant is that the instruction is too narrow, and does not, in terms, submit the proposition that plaintiff's intestate must have exercised ordinary care in leaving the west track, and assumes

that an ordinarily prudent person would be situated as the deceased was situated before and at the time of the accident; that the central inquiry was not what the deceased did after getting into the situation, but was he in the exercise of ordinary care in getting himself into that situation; that although the words "before and at the time of" are in the instruction, the jury were warranted in construing it to mean that the appellee might recover if, after leaving the west track, his intestate exercised the care an ordinarily prudent person would usually exercise. In support of this contention appellant cites *North Chicago Street Railroad Co.* v. *Cossar*, 203 Ill. 608, *Illinois Central Railroad Co.* v. *Weldon*, 52 id. 290, and *Illinois Central Railroad Co.* v. *Creighton*, 53 Ill. App. 45. In the *Cossar case* time was not an element of the instruction complained of, but "the circumstance and in the situation" were to be the criteria, and we expressed the view that under it no time or circumstance, except that directly attendant upon the immediate accident, was included in its terms, and that it was too narrow, as it excluded the requirement that the plaintiff should not negligently place herself in a position of danger. In the *Weldon case, supra,* the instruction is not set out. The court say the instructions were confined to the conduct of the deceased whilst unloading the coal cars, during which he received his injuries, but that the central question was, did he exercise proper care and caution in entering the car under the circumstances, and that the latter question should have been submitted. In the *Creighton case, supra,* the instruction was, "at the time of such alleged injuries exercising due care." The injury was caused in an effort of the plaintiff, an engineer, to reverse the lever on a locomotive and avert a wreck. The evidence tended to show that the difficulty in reversing the lever arose from the plaintiff having two days previously plugged certain holes in the cylinder in such manner that the lever could only be moved by great ef-

fort. The defense was contributory negligence. It was held that the instruction confining the due care to the time of the injury was too narrow, as it authorized the jury to find for the plaintiff if using due care at the time, although the injury may have been due to his gross negligence two days before. All that occurred in the case at bar from the time the deceased reached Forty-second street to the time of the accident could not have exceeded two or three minutes, and the instruction required due care before and at the time of the injury, and we think was broad enough, and did not assume, as is contended, that the deceased was in the exercise of due care at any time.

The appellant's fourth instruction told the jury that White, the deceased, and appellant, were required to use the same degree of care to avoid the injury, and by appellant's eighth instruction the jury were told that if White was negligent and careless in driving his wagon at the time and place in question, and that such negligence caused his injury, appellee could not recover.

Appellant's instruction No. 12 was refused. It was as follows:

"If the jury believe, from the evidence, that ordinary care on the part of White for his own safety required him, before driving to or upon the track parallel with the track upon which he had been driving, at the time and place in question and under all the circumstances in evidence, to look and ascertain whether or not a car was approaching along the north-bound track and not to drive upon said track without so looking, and if the jury believe, from the evidence, that White, if he had looked, could by the exercise of ordinary care have ascertained whether or not a car was approaching along the said north-bound track, and if the jury further believe, from the evidence, that White did not so look and ascertain whether or not the car was so approaching, and that he was injured in consequence and because of his failure, if

he did so fail to look and ascertain, then the court instructs the jury to find the defendant not guilty."

Appellee says this instruction was properly refused because it assumes that if plaintiff's intestate saw the car approaching he should in no event have driven upon the track; that it emphasized the question of his looking or failing to look, and that it was covered by other general instructions requiring him to exercise ordinary care to avoid the injury. We do not think any of the suggestions made justify its refusal. It assumes no fact, but submits the question as one of fact, to be determined from the evidence, whether plaintiff's intestate, in the exercise of ordinary care, should have looked for the car before turning out, and whether he did look, and then states that if he should have looked and did not look, and was injured in consequence of his failure to do so, the jury should find the appellant not guilty. There was no other instruction that contained the proposition here presented, except instructions of a general character. The matter there presented was the chief ground of defense, and should have been submitted by the instruction offered. *Mallen* v. *Waldowski,* 203 Ill. 87; *Chicago, Burlington and Quincy Railroad Co.* v. *Camper,* 199 id. 569; *Chicago and Eastern Illinois Railroad Co.* v. *Storment,* 190 id. 42.

The court refused appellant's instruction No. 13, which was as follows:

"The issues you are sworn to try in this case are as follows: Was the electric car which collided with the wagon in question carelessly and improperly driven or managed by the servant or servants of the defendant? Was the said electric car traveling at an unnecessarily high or dangerous rate of speed? Did the servant or servants of defendant negligently fail to ring a gong or bell at the time and place in question? Did the servant or servants of defendant in charge of said car know that White was in a position of peril in time to have stopped the car in time to have avoided the collision, by the use

of reasonable care on their part? Could the servant or servants of defendant in charge of the electric car, by the use of reasonable care, have seen that White was in a position of peril in time to have stopped the said car before the collision? Was White, at and just before the time of the collision, using ordinary care and caution for his own safety? If you conclude that the greater weight of the evidence does not show that White was using such care and caution for his own safety you need not concern yourselves with the other issues, because in no event can the plaintiff be entitled to recover a verdict unless it has been shown by the greater weight of the evidence that such care and caution was used by White. If you do find from the greater weight of the evidence that such care and caution was used by White, you will examine the evidence bearing upon the other issues, and if you do not find the greater weight of the evidence, taken as a whole, will warrant you in answering one or more of them in the affirmative, you should find the defendant not guilty."

And the court gave appellant's instruction No. 18, as follows:

"The jury are instructed that the plaintiff cannot recover at all in this case against the defendant company unless the jury believe that the plaintiff has proved, by a preponderance of the evidence, the following propositions: First, that the plaintiff's intestate was exercising ordinary care for his own safety at and just prior to the time of the accident in question; second, that the defendant company was guilty of negligence in the manner charged in the declaration; and, third, that such negligence was the proximate, direct cause of the death of the plaintiff's intestate. And if you find, from the evidence, that the plaintiff has failed so to prove these propositions as stated, or that he has failed so to prove any one of them, he cannot recover against said defendant company, and you should find the defendant company not guilty."

Appellee claims that by giving appellant's instruction No. 18, and other general instructions, the errors, if any, in refusing No. 13 were cured. Appellee further contends that instruction No. 13 ignores the charge in the declaration that appellant did not maintain a proper lookout; that the direction by the next to the last clause of the instruction refused, that the jury need not consider the other matters if they found the appellee's intestate was not in the exercise of due care and caution, ignored the question of the appellant's gross negligence, which the *narr.* was broad enough to cover and there was evidence tending to support. As to the latter claim we will not enter into a discussion, but will only say, we think there was no evidence tending to support the charge of gross negligence on the part of appellant, and no instruction was asked by appellee upon the theory that there was. Under the fourth and fifth clauses the question of a proper lookout was included. The instruction was not subject to objection as to form or substance and fairly stated the issues under the declaration, and unless covered by other instructions should have been given.

Instruction No. 13 was presented among the fifteen to which the court had limited each side, and after it was refused appellant offered three more instructions, numbered 16, 17 and 18, together with written suggestions why the court should consider the same, and 16 and 18 were given and 17 refused. Appellee only offered six instructions, and they were 19 to 24, inclusive, and were all given. By appellee's instruction No. 19 the jury were told that if White, in the exercise of ordinary care, was killed by or in consequence of the negligence of the defendant as charged in the declaration, they should find the defendant guilty. The jury were thus to learn, as best they could, and determine for themselves, so far as the plaintiff was concerned, what actionable negligence was charged in the declaration, and the appellant, with

such instruction given for appellee, was entitled to have the jury fairly and fully informed what negligence was charged in the declaration and what acts or omissions of the defendant must be found to authorize the verdict of guilty. (*North Chicago Street Railroad Co.* v. *Polkey*, 203 Ill. 225; *Illinois Central Railroad Co.* v. *King*, 179 id. 91; *West Chicago Street Railroad Co.* v. *Kautz*, 89 Ill. App. 309.) In the latter case the judgment of the trial court was reversed for failure to give an instruction almost identical with appellant's No. 13.   We do not think the instructions given covered the issues in the case.

Appellant's ninth instruction began with the statement, "the court instructs the jury that White had no right to drive upon the railway track in question so as to obstruct or unnecessarily interfere with the passage of the defendant's cars."   There was no evidence in the record tending to show White sought to obstruct or unnecessarily interfere with the passage of appellant's cars.   The instruction assumed either the fact or that there was evidence tending to support the statement.   What followed in the instruction did not relieve it from such vice, and the court properly refused it.

Appellant's seventeenth instruction was refused. The court declined to examine or pass upon it as it was in excess of the limit as to number which the court had fixed. The material parts of it were covered by appellant's instructions Nos. 2, 4 and 5, and its refusal was not error.

Complaint is made of the modification of some of appellant's instructions, but we do not find the modifications such as should be held to be error.

*Third*—It is claimed by appellant that it was prejudiced by the manner and language of the court while fixing and enforcing the rule limiting the number of instructions.   At the close of the plaintiff's case the court openly announced the rule limiting the total number of instructions to thirty, allowing fifteen to each side, and stated no more would be received and considered. When

appellant offered its instructions there were eighteen, and the court insisted that counsel should select fifteen of them to be passed upon, and it is claimed that in the colloquy between the court and counsel the court was gruff and arbitrary, and so spoke that the jury might infer that appellant was seeking both an unfair and illegal advantage. . The language of the court is included in the bill and briefs, and is followed by the statement that it is doubtful if the jury heard what transpired. The manner of the court, more than the language, is complained of. The court was not authorized to arbitrarily fix the number of instructions that should be presented or passed upon. (*Chicago City Railway Co.* v. *Sandusky,* 198 Ill. 400.) By fixing the rule appellant was not injured, as all its instructions presented,—and there were eighteen,—were considered and passed upon but one,— No. 17. It would have been proper to have refused it when considered. We cannot say whether the jury observed or heard what transpired as to the instructions, or what effect it had, if any, on the jury. It cannot be maintained that it was the proper thing for the court to establish an illegal rule, and become angry and show his displeasure because it was not acquiesced in.

*Fourth*—The argument of counsel for appellee, in some of its features, was strenuously objected to by appellant, and the remarks were mostly withdrawn and the objection sustained. To say the least, some of the remarks should not have been made, and we may hope will not be repeated upon the further trial for which this cause will be remanded to the superior court.

The judgments of the superior court and the Appellate Court will be reversed.

*Reversed and remanded.*

Afterwards, on April 7, 1904, on consideration of the petition for rehearing filed herein, the court, speaking through Mr. JUSTICE SCOTT, delivered the following oral opinion:

This is a petition for rehearing. The practice in reference to the presentation thereof is regulated by rule 30 of the rules of practice of this court, which provides that such a petition shall state "concisely the points supposed to have been overlooked or misapprehended by the court, with proper reference to the particular portion of the original abstract and brief relied upon. In no case will any argument be permitted in support of such petition. This rule will be strictly enforced, and any petition in violation thereof will be stricken from the files."

A rehearing may be had in this court when any material fact has been overlooked or misapprehended or where the court has failed to determine some proposition of law that is of controlling importance in the cause, and the only legitimate office of the petition for rehearing is to show, by a terse and accurate statement, the court's inadvertence, with reference to such portions of the brief or abstract as will sustain petitioner's position. The petition under consideration is a gross violation of this rule. It contains more than thirty pages of printed argument, and is practically a re-argument of the cause.

Helpful arguments, both oral and printed, are welcomed by this court. It is our earnest desire that a litigant should avail himself to the fullest extent of his right to argue, orally and otherwise, his cause in this forum. The proper time to argue, however, is at the time of submission, and when a case has been fully argued, has received careful consideration and been decided, a re-argument in a petition for a rehearing can serve no useful purpose. All that is proper in that respect is a reference to that portion of the brief and argument which petitioner conceives will show the error of the court.

The practice of arguing cases in petitions for rehearing has been gradually increasing in this court. The rule has not been enforced because the court, as a body, has been loth, and especially has the writer of the opinion assailed been loth, to have a petition of this character

stricken, lest there might possibly be error in the judgment, which would remain unchallenged and uncorrected if that course was followed; but the abuse of the rule has become so prevalent in this respect that the consideration of the arguments contained in these petitions has become an intolerable, as well as a useless, burden. The great majority of such petitions now filed in this court are but re-arguments. So far as the one now before us is concerned, in view of the fact that counsel filing it was no doubt aware that the rule in question had not been heretofore strictly applied, we have examined the petition far enough to ascertain the points relied upon and deem them without merit.

Every petition for rehearing hereafter filed in this court which, upon examination, is found to contain any argument whatever, will be immediately stricken, without being considered upon the merits at all. Rule 30 will be rigidly enforced.

The petition for a rehearing in the case at bar will be stricken from the files.          *Petition stricken.*