### Lars Larsen v. Chicago Union Traction Company et al.

#### Gen. No. 12,873.

1. CREDIBILITY OF WITNESS—*instruction with respect to interest of plaintiff sustained.* It is proper to instruct the jury that in weighing the testimony of the plaintiff they have a right to take into consideration the fact of his interest in the result of the suit.

2. INSTRUCTION—*effect of failure to define "accident."* An instruction is not erroneous in failing to define the term "accident" employed therein.

3. CONDUCT OF BAILIFF—*when not ground for a new trial.* Held, that a statement by a bailiff to a juror, in response to a question of such juror, that "such a thing as a disagreement is not known in this court," etc., did not constitute sufficient ground for granting a new trial.

Action in case for personal injuries. Error to the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1906. Affirmed. Opinion filed February 1, 1907.

Larsen v. Chi. Union Traction Co.

Thomas E. Rooney and Ferdinand Goss, for plaintiff in error.

John A. Rose and Albert M. Cross, for defendant in error; W. W. Gurley, of counsel.

Mr. Justice Smith delivered the opinion of the court.

This writ of error to the Superior Court is sued out by plaintiff in error to reverse a judgment of that court in an action on the case in which plaintiff sought to recover damages for personal injury alleged to have been caused by the negligence of defendants in error. There was a verdict of not guilty and a judgment thereon for defendants.

The declaration consisted of three counts. The first count, after alleging the ownership and operation of a street railway in north Western avenue and a car along the same toward and approaching Wabansia avenue, averred that the defendants so negligently and carelessly and improperly drove, managed and operated the car that it ran into plaintiff's vehicle upon the crossing, whereby he was injured.

The second and third counts are like the first, except that in the second count excessive speed is charged, and in the the third count a failure to keep a proper watch and lookout for the approach of vehicles is alleged. Both defendants pleaded the general issue.

It is urged by plaintiff in error that the verdict of the jury is against the great weight of the evidence

No question is made in this case and none could be made legally that the rights of the street railway company and of the traveler on the street at a street intersection are equal, although it is urged quite at length in the brief for plaintiff in error. The question of fact is whether or not the plaintiff at the time of the accident was exercising ordinary care, and the defendants were negligent as averred in the plaintiff's declaration.

The accident happened between eight and nine o'clock in the evening of April 8, 1903, and it was dark. The plaintiff in his coal wagon approached the street car track on north Western avenue, going due west on Wabansia avenue. He had a kerosene lamp in a tin frame so bent as to throw the light out in front of the wagon. The seat of the wagon was at the extreme front of the wagon box, and the light stood on the foot rest in front of the seat.

Defendant's car was going north on north Western avenue and approaching Wabansia avenue. It appears that the only witnesses who testify that there was a light on plaintiff's wagon were the plaintiff and the witness Gray who was standing on the west side of Western avenue, almost in front of the plaintiff's wagon as it was approaching Western avenue. But Olson, called by the plaintiff, Paul Kalinski and the motorman Linn, all of whom were on the front platform of the car, saw no light on plaintiff's wagon.

On the other hand the testimony shows clearly, and it is not disputed, that the car was fully lighted inside, and some of the witnesses say the electric headlight of the car was burning, while other witnesses say they did not notice or remember it.

Another important feature of the case is the physical surroundings of the place of the accident.

Wabansia avenue does not run straight across Western avenue. The portion of Wabansia avenue running west from Western avenue is about 150 feet south of the portion of Wabansia avenue which is east of Western avenue. The streets at this point are three or four feet higher than the adjacent ground. There were no buildings on the south side of Wabansia avenue and east of Western avenue. There were no buildings on the east side of Western avenue south of Wabansia avenue for nearly a block from Wabansia avenue, so that a car going north on Western avenue would be visible to a person approaching Western avenue when it was nearly a block away.

Under these conditions, which were perfectly familiar to the plaintiff, the intersection of the streets being on his usual route in going home from his business, the plaintiff approached the intersection from the east with his horse "running a little" until he came to the crossing, when he brought his horse to a walk. When according to his own testimony, his horse was on the west car track and his wagon was on the east track on which the car was approaching, he first saw the car. He said the car was then 125 or 150 feet away and his horse was then walking at a fast walk, and that then he tried his best to get over the track, but the car was too swift for him.

This account of the occurrence differs in some material features from that given by plaintiff's witness Gray, who was standing in front of his place of business on the west side of Western avenue about midway between the different portions of Wabansia avenue. According to this witness' statement plaintiff drove west on Wabansia avenue, and when his horse reached the first track he turned south. His horse was walking at that point. Plaintiff was urging his horse, but did not get the horse out of a walk. The witness then looked down the street and saw the car over 150 feet away; the collision occurred two doors north of his store. According to the testimony of this witness, then the plaintiff traveled south or southwesterly in the north-bound track a distance of forty or fifty feet to the point of collision.

Plaintiff's witness, Olson, said he was on the front platform of the car, and when he first saw the team it was about one hundred and fifty feet away and plaintiff was driving in a southwesterly direction and his front wheel was in line with the center of the car, the horse just clearing the track. The horse was walking. This witness' testimony also differs from that of the plaintiff, both as to the direction plaintiff was driving and the point of collision. It substantially corroborates the testimony of Gray.

From the testimony of these witnesses for the plaintiff and the testimony of the witnesses called by the defendants the jury were warranted, we think, in finding that the plaintiff drove upon the north-bound track of the defendants in a southwestern direction toward the approaching car, which without doubt was moving rapidly, when the car was in full view and but a short distance from him, and that in so doing the plaintiff was guilty of contributory negligence. We are not of the opinion that the verdict is against the weight of the evidence.

It is urged that the court erred in giving instructions numbered 6, 7, 9, 10, 12, 13, 14, 15, 16, 17, and 18, requested by defendants in error. We have examined these instructions with care and we find no reversible error in them.

The sixth instruction upon the subject of the testimony of the employes of defendants in error was approved in C. & P. Ry. Co. v. Rollins, 195 Ill. 219.

The seventh instruction given at the request of defendants in error, to the effect that the jury in weighing the testimony of plaintiff in error had the right to take into consideration the fact that the plaintiff was plaintiff and interested in the result of the suit, was approved in W. C. St. R. R. Co. v. Dougherty 170 Ill. 379; and W. C. St. R. R. Co. v. Estep, 162 id. 130.

In stating that the defendants in error were not required to exercise towards the plaintiff in error the highest degree of care, but were required to exercise toward him ordinary care, and defining ordinary care, the ninth instruction given at the request of the defendants in error stated the legal standard of care. What ordinary care is, depends upon the circumstances of each case. Ordinary care in running a car in the middle of a block may not be the same as ordinary care at an intersection of streets. In W. C. St. R. R. Co. v. McCallum, 169 Ill. 240, and W. C. St. R. R. Co. v Petters, 196 id. 298, cited by counsel for plaintiff in error, ordinary care is recog-

nized as the standard of care to be exercised by both the street car company and the injured plaintiff at a street crossing.

The tenth instruction criticised by plaintiff in error, to the effect that if the injury to the plaintiff was the result of mere accident which occurred without the negligence of the defendants charged in the declaration, the jury should find for the defendants, was not erroneous, we think, because it failed to define the term "accident."

The twelfth instruction contained nothing but the statement that the plaintiff was in duty bound to exercise ordinary care to look out for defendants' approaching car and to avoid colliding with it at the time and place in question, as much as the motorman in charge of defendants' car was in duty bound to look out for and to avoid a collision with plaintiff's wagon. We think this was not objectionable or erroneous.

The thirteenth, fourteenth and sixteenth instructions complained of were approved of in C. C. Ry. Co. v. O'Donnell, 208 Ill. 267, 275, 276. Defendants' fifteenth instruction was warranted by C., R. I. & P. Ry. Co. v. Bell, 70 Ill. 102.

Defendants' seventeenth and eighteenth instructions relate to the question of plaintiff's contributory negligence. It was not necessary in these instructions to cover also the question of the duties of defendants' motorman.

It is urged that the bailiff in charge of the jury was guilty of such misconduct as to require a reversal of the judgment; and that the court erred in rejecting the affidavits of the jurors setting forth what the bailiff said to them.

It appears from the affidavits that while the jurors were considering their verdict, the bailiff in charge of the jury on being questioned by certain of the jurors as to the length of time they would be detained, if no agreement upon a verdict was reached, replied "such a thing as a disagreement is not known in this

292 APPELLATE COURTS OF ILLINOIS.

VOL. 131.] Yunkes v. Latrobe. S. & C. Co.

court," and that "the court had on one occasion held a jury sixty-four hours because they would not agree."

It appears from the affidavit of Davidson (concurred in by those of Forsyth and DeRoo) that the bailiff made the statement in answer to questions of certain jurors. It does not appear that the bailiff suggested to the jurors any course of conduct or any opinion of the court or of his own on the case. It does not appear where the conversation between the jurors and the bailiff took place, whether in the jury room or elsewhere. There is nothing to indicate that the bailiff knew that the jury had not agreed on their verdict, and therefore the question of the jury may have appeared to him as a mere idle query and of no importance at the time. The statement as disclosed by the affidavits was, we think, colorless and without any tendency to prejudice or affect the jurors in favor of or against either party to the cause, and did not purport to carry with it any threat or coercion. In our opinion the affidavits do not disclose sufficient misconduct to require the court, in the exercise of the sound legal discretion lodged in the presiding judge, to grant a new trial. Heston v. Neathammer, 180 Ill. 150; Bruce v. Truett, 4 Scam. 454; Leach v. Wilbur, 91 Mass. 212, 213; Wiggins v. Downer, 67 How. Pr. 65; Gamsby v. Columbia, 57 N. H. 66.

Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*