[No. 27619.   Department One.   November 28, 1939.]

JULIA JOSKI, *as Administratrix, Respondent,* v. ELIZABETH SHORT, *Appellant.*[1]

[1]Reported in 96 P. (2d) 483.

456

*Eggerman & Rosling, Walser S. Greathouse,* and *Joseph J. Lanza,* for appellant.

*Robert B. Abel* and *W. H. Abel,* for respondent.

MAIN, J.—This action was brought by Julia Joski, administratrix of the estate of John Joski, deceased, for the benefit of the decedent's mother. The action was begun in Kittitas county, where the defendant resided. Thereafter, the plaintiff moved for a transfer

to Pierce county on the ground of convenience of witnesses, and the case was so transferred.

The complaint charged that the death of John Joski was caused by the negligence of the defendant. In the answer, the defendant denied the charge of negligence and pleaded contributory negligence on the part of the deceased. In addition to this, she, in effect, pleaded that, if she was negligent, it was not the proximate cause of the death. The cause was tried before the court and a jury, and resulted in a verdict in the sum of six thousand dollars. The defendant moved for judgment notwithstanding the verdict and, in the alternative, for a new trial, both of which motions were overruled, and from the judgment entered upon the verdict, she appeals.

The facts may be summarized as follows: The accident which resulted in the death of John Joski happened October 30, 1937, on the Pacific highway some distance north of the entrance to Fort Lewis. It is not accurate to indicate that the highway at this point runs north and south, because it extends in a general northeasterly and southwesterly direction. For the convenience of expression, it will be referred to as though it extended north and south. The time of the accident was some time in the evening after five o'clock. The witnesses did not fix exactly the same time. It was dark at the time, but there was no rain or mist, and the appellant said that there was "nothing to distract my vision. My vision is good."

The deceased was a private in the army of the United States at Fort Lewis. At the time of the accident, he was proceeding north on a motorcycle. The appellant was proceeding north in a Chevrolet sedan. The sedan and the motorcycle came into collision. The jury had a right to infer that the appellant, in attempting to pass the motorcycle, sideswiped it, though she says

that she did not at any time see it and did not know that she had struck the motorcycle until she had proceeded about one hundred feet farther, parked her car on the left side of the road, and returned to the place of the accident.

Without reviewing the evidence in further detail, there can be no question but that the jury had a right to find that the two vehicles came together. John Joski was so severely injured that he never regained consciousness and died before he reached the hospital. As above indicated, the action was brought for the benefit of the mother of the deceased, on the theory that she was, at least in part, dependent upon him for support.

The appellant first contends that it was error for the trial court to transfer the case from Kittitas county to Pierce county, on the ground of the convenience of witnesses. All the witnesses, with the exception of the defendant, who lived in Kittitas county, and the respondent and her mother, whose residence was in Pacific county, resided in Pierce county, with a possible exception of one referred to as residing in the city of Olympia, in Thurston county.

Rem. Rev. Stat., § 205-1 [P. C. § 8542-1], provides that an action may be brought in any county in which the defendant resides at the time of the commencement of the action. Section 209 [P. C. § 8545], provides that the court may, on motion,

". . . in the following cases, change the place of trial, when it appears by affidavit or other satisfactory proof, . . .

"3. That the convenience of witnesses or the ends of justice would be forwarded by the change; . . ."

The appellant asserts that this statute is permissive only, and that the respondent, by bringing the action in the first instance in Kittitas county rather

than in Pierce county, waived her right to have it transferred to the latter county. It has been repeatedly held by this court that one who is sued in a county other than his residence is entitled, as a matter of right, to a change of venue, if the action be a transitory one. *State ex rel. Martin v. Superior Court,* 97 Wash. 358, 166 Pac. 630, L. R. A. 1917F, 905; *State ex rel. Schlosberg v. Superior Court,* 106 Wash. 320, 179 Pac. 865; *State ex rel. Merritt v. Superior Court,* 147 Wash. 690, 267 Pac. 503. Had the action been brought in Pierce county, the appellant could have insisted upon it being transferred to Kittitas county, her residence. The bringing of the action in the county where the appellant was entitled to have it brought, under the law, could not operate as a waiver of the right of the respondent to subsequently move for a transfer on the ground of the convenience of witnesses.

Determining whether a transfer should be made, rests somewhat within the discretion of the trial court. *State ex rel. Ross v. Superior Court,* 132 Wash. 102, 231 Pac. 453. There is nothing in this case which would indicate that the trial court did not properly exercise its discretion in ordering the transfer.

The appellant next contends that the demurrer which she interposed to the complaint should have been sustained; this, on the theory that the complaint did not allege that John Joski was unmarried and left surviving him no wife, child, or children. It is admitted that such an allegation was necessary in order to state a cause of action. This defect in the complaint was not specifically pointed out prior to the time that the case went to the jury and the appellant was taking her exceptions to the instructions. It is true that one of the grounds of the demurrer is "that the complaint does not state facts sufficient to constitute a cause of action." When the matter was called to the attention

of the court at the time stated, this occurred: In instruction No. 13, as it originally read, it was stated that the deceased, John Joski, had never been married during his lifetime. Counsel for the appellant then stated: "I do not recall that there is evidence of the boy not being actually married." To this the trial judge replied: "My understanding is that the whole case has been tried on the theory that he was not married, and I assumed that there was no controversy about that;" to which counsel for the appellant replied: "If the instructions of the court tell the jury that he is unmarried, I will not except to that." Upon this state of the record, we think the appellant did not have a right to insist upon her demurrer to the complaint.

We now come to the merits, upon which the appellant first contends that Bessie Joski, mother of the deceased, was not dependent upon her son for support. The evidence shows that, when John Joski was nine years old and the family was residing in Raymond, in Pacific county, he began selling newspapers and doing odd jobs for which he received compensation, and this money he turned over to his mother. He enlisted in the army August 22, 1936, and during the month of October following he sent his mother forty dollars, and every month thereafter until the time of his death he sent sums varying from fifteen to thirty dollars. At the time of her son's death, Mrs. Joski was employed to do housework for a family in Tacoma, for which she received twenty dollars per month and her board and lodging. A doctor testified that, due to her condition of health, her efficiency was impaired about thirty-five per cent. She had an affliction of the heart, which, when she did hard work, gave her a great deal of trouble.

To sustain a recovery upon the ground of depen-

dency, it was necessary for the respondent to establish that she was, at the time of her son's death, substantially dependent upon him for support, and also that this dependency was recognized by the son by his contributing to her support, not merely by way of casual gifts from son to mother, but in recognition of the mother's dependency. *Mitchell v. Rice,* 183 Wash. 402, 48 P. (2d) 949.

In the case of *Cook v. Rafferty,* 200 Wash. 234, 93 P. (2d) 376, upon this question it was said:

"It is established in this state that parents of an adult son need not be wholly dependent upon him for support in order to recover damages for his wrongful death. Partial dependency is sufficient."

At the time of his death, John Joski was eighteen years of age. Since he was nine years old, he had been contributing to his mother's support, and the jury was warranted in finding that he did this in recognition that his mother was dependent upon him, in part at least. The continuity of the sums that he paid to his mother is indicative that these sums were paid by the son as a contribution for her support, in recognition of her dependency and not by way of casual gifts. His mother's condition of health, which resulted in the impairment of her ability to do the work that she had formerly done, and the amount which she was receiving for the work that she did, justified the jury in finding that she was, in part, dependent upon her son for support.

The appellant next contends that it was not her negligence which resulted in the two vehicles coming together and the death of John Joski. There was no eye witness to the accident. The appellant says that she did not see the motorcycle at all. The testimony of one witness, a highway patrolman, is that, when he appeared at the scene of the accident shortly

after it occurred, the lights of the motorcycle were burning.

Rem. Rev. Stat., Vol. 7A, § 6360-77 [P. C. § 2696-835], provides, in part, that the overtaking vehicle "shall drive clear of the overtaken vehicle and shall continue its overtaking speed until it has passed the overtaken vehicle . . . "; and further, that the driver of the overtaking vehicle shall signal his intention to pass by the use of a horn or other sounding device.

It was the duty of the appellant to exercise care while passing the motorcycle. *Burns v. Standring,* 148 Wash. 291, 268 Pac. 866. The appellant, as she testifies, did not see the motorcycle, and, under the evidence, the jury had a right to find that there was no reason why she should not have seen it in time to have avoided colliding with it. If she failed to see the motorcycle, which it was her duty to see, and when there was no reason why she should not have seen it, the jury had a right to find that she was negligent.

Something is said in this connection about the contributory negligence of the deceased, but he was presumed to have been exercising due care, inasmuch as there was no evidence to the contrary. *Reinhart v. Oregon-Washington R. & N. Co.,* 174 Wash. 320, 24 P. (2d) 615.

The appellant next contends that the court should have granted a new trial for error in an instruction given and the refusal to give a requested instruction. The instruction given was, in part, to the effect that the burden of proof was upon

". . . the plaintiff in this case to show the dependency of Bessie Joski upon the deceased son and in connection with that burden of proof you are instructed that the burden is upon the plaintiff to show by a preponderance of the evidence in the case that the husband of Bessie Joski was unable to support or legally refused to support Bessie Joski according to

the station of life to which she had been accustomed . . ."

The objection to the instruction is the phrase "or legally refused to support." Aside from this phrase, there is no objection to it. While the phrase complained of should not have been inserted therein, we fail to see how the appellant was prejudiced thereby. It was adding a burden to the respondent rather than to the appellant. The evidence in this case shows that Mrs. Joski and her husband had been estranged for over ten years, and that he had not contributed anything to the support of either herself or the children during the past six years. It will be admitted that he was legally obligated to support his wife, if able to do so, but, under the facts in this case, it was not necessary for an attempt to be made to enforce such support before this action could be maintained upon dependency.

The instruction requested and refused was to the effect that, if the jury found from the evidence "that decedent Joski turned his motorcycle directly in the path of defendant's automobile, then your verdict must be for the defendant." This instruction was properly refused, because there was no evidence that John Joski turned his motorcycle directly in the path of the appellant's automobile, and there was no evidence from which such fact could be inferred.

It is next contended that there was irregularity on the part of the court and a bailiff for which a new trial should be granted. After the jury retired and was deliberating upon its verdict, the foreman thereof inquired of the bailiff whether the court could change the verdict of the jury, and the bailiff replied: "Yes, but just a moment, I will see the judge." Within a few minutes, in response to a knock at the door, the

foreman opened the door, and the bailiff said: "No, it is for the jury to fix the verdict."

Rem. Rev. Stat., § 352 [P. C. § 8516], provides that, after the jury have retired for deliberation, if they desire to be informed of any point of law arising in the case, they should require the officer having them in charge to conduct them into court, and, upon being brought into court, the information required "shall be given in the presence of or after notice to the parties or their attorneys." In criminal cases, this court has held that, if a judge goes to the door of the jury room, while the jury is deliberating, and opens the door, even though he does not pass into the jury room, prejudice will be presumed. *State v. Wroth,* 15 Wash. 621, 47 Pac. 106; *State v. Waite,* 135 Wash. 667, 238 Pac. 617. However, the rule does not appear to be as strict in civil cases. *Dishmaker v. Heck,* 159 Wis. 572, 150 N. W. 951, Ann. Cas. 1917A, 400; *Continental Casualty Co. v. Ogburn,* 186 Ala. 398, 64 So. 619; *Larsen v. Chicago Union Traction Co.,* 131 Ill. App. 286.

In this case, the court, in an instruction, had, in effect, told the jury that it was their duty to determine the amount of the damages. This case differs from the other cases decided by this court in two respects, those cases were criminal cases and this is a civil case; and in the further fact that, in those cases, the trial judge went to the door of the jury room, while, in this case, he did not. That difference may not be very substantial, but, viewing the situation as it was, we are unable to see that the appellant was prejudiced by the conduct of the bailiff and the trial judge. We recognize that it was an irregularity which should be carefully guarded against.

Finally, it is contended that a new trial should be granted because the verdict was excessive. Mrs.

Joski, at the time of the death of her son, was forty-nine years of age, and had a life expectancy of twenty-one years. The son was eighteen years of age, had a life expectancy of forty-three years, and was earning, at the time of his death, in addition to what was called his "base pay" of thirty dollars a month, other sums which increased his total income to approximately fifty dollars per month. It will be admitted that the trial court has the power to grant a new trial where the verdict is so excessive as to indicate passion or prejudice on the part of the jury or enter an order providing for a new trial unless the party adversely affected shall consent to a reduction of the verdict. There is nothing, however, in the record before us to indicate that the jury, in fixing the amount of the verdict at six thousand dollars, was actuated by any improper motive.

The judgment will be affirmed.

BLAKE, C. J., MILLARD, ROBINSON, and SIMPSON, JJ., concur.