## Abel Davis, recorder, et al., v. The Abstract Construction Company.

### Gen. No. 12,418.

1. RECORDER—*nature of business of, in making abstracts.*   When the county undertakes, pursuant to the authority conferred upon it by statute, to make and sell abstracts for compensation, it does so in the exercise of its private, and not of its governmental functions.

2. RECORDER—*when may deny access to records.*   While by statute the public is entitled to free access to records of a public nature, such as are by law required to be kept by the recorder, yet the recorder may deny free access to records, such as tract indices and abstract books used by him in connection with the private business of the county as an abstract maker, where the granting of such access would result in competition in the business of abstract-making.

3. STATUTES—*when not to be construed as changing common law.*   It is a general rule in the construction of statutes that they are not to be construed as changing the common law farther than by their terms they expressly declare.

Injunctional proceeding.   Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding.   Heard in the Branch Appellate Court at the April term, 1905.   Reversed and remanded.   Opinion filed June 2, 1905.

**Statement by the Court.**   This is an appeal from an interlocutory order granting an injunction which *inter alia* restrains the recorder and the commissioners of Cook county until the further order of court from in any manner interfering with the appellee or its employees "in consulting the books or any of the files, papers or records in the possession of the defendant, Abel Davis, Recorder of Cook county, or

from taking extracts, data or information therefrom or making abstract books therefrom or from having access to the office or offices of said recorder during office hours through the employees of said complainant." The order restrains the commissioners "from all acts of whatsoever nature or kind which may interfere with the complainant in its work of making the abstract books mentioned in the bill of complaint filed herein or from taking abstracts or information from the books in the recorder's office, or from consulting the said books in the possession of" the recorder, "and taking extracts, information and data therefrom," from interfering with appellee "in and about its business of posting from the books in the possession of the recorder" or from "inspecting and taking data from instruments filed from day to day as shall be requisite and necessary to the complainant in its work of making abstract books from the public records in the office of the recorder of Cook county."

It appears from the bill of complaint that appellee was incorporated in February, 1904, under the laws of this State for the purpose of compiling and making abstract books of title to real property in Cook county and selling abstracts. It is averred that in the recorder's office of Cook county there are about 9,000 record books, and also 180 grantor indices, 180 grantee indices, 116 corporation books; that about 600,-000 suits have been commenced in the various courts of said county since the fire of 1871, and that to furnish abstracts of title to property in Cook county it is necessary to make abstract books from the books and records in the recorder's office and clerk's offices of the various courts and consult each and every one of said volumes; that about 100,000 estates have been probated; that in the county clerk's office are books relating to tax sales and special assessments so numerous that complainant is not able to state the exact number, and that 30,000 special assessment suits have been begun since said fire of 1871, and that it is necessary to consult all of said books and records in making abstracts and to go through every collector's office in every township in Cook county to obtain adequate data and information; that to prepare ab-

stract books necessary for said business a large force of men must be employed, years of time taken and large expense incurred.

The bill charges that the recorder and divers of the county commissioners who have combined and confederated with each other and with unknown persons to injure appellee, pretend that appellee has no right to make abstract books from the records of the recorder, except the books mentioned in divisions 1, 2, 3 and 4 of section 12 of chapter 115 of the Revised Statutes; that the defendant, Abel Davis, Recorder, has stated and threatened that he will oust appellee's employees from said recorder's office and prevent them from taking extracts and information from the books which are necessary to appellee's business; that said recorder has taken legal advice and been advised, as appellee is informed and believes, that appellee has no such right as it claims in that connection, and pursuant thereto states that he will not permit appellee's employees to continue their said work in said office, and that he will carry out said threats unless restrained by injunction, in which course said recorder is instructed and directed by other defendants, county commissioners of Cook county.

HARRY A. LEWIS, County Attorney, WILSON, MOORE & McILVAINE, WILLIAM F. STRUCKMAN, Assistant County Attorney, and FRANK L. SHEPARD, for appellants.

DARROW, MASTERS & WILSON, for appellee; PHILIP STEIN, EDGAR L. MASTERS and GEORGE A. TRUDE, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

The injunction order appealed from restrains the recorder and the commissioners of Cook county from in any manner preventing or hindering appellee or its employees from taking extracts, data or information or making abstract books from any of the files, papers or records in the recorder's possession, and from all acts which may interfere with appellee in "taking abstracts or information from the books in

the recorder's office" and in taking extracts, information and data therefrom. The phraseology of the injunction is somewhat vague, but it is sufficiently manifest that the purpose is to permit appellee to make abstract books, using any and all of the books in the recorder's office for that purpose.

As to most of the books in the recorder's possession which are mentioned in the bill of complaint, and included in the injunction, there is no contention and apparently no difference of opinion. It is conceded on all sides that appellee and the general public have the right under the statute to inspect and examine them and "take memoranda and abstracts thereof without fee or reward." These books are the ones mentioned in the first four paragraphs of section 12, chapter 115, and are such books as the recorder is by the statute unconditionally required to keep, including entry books, grantors' indices, grantees' indices, the indices in which are "entered in alphabetical order the name of each grantor and grantee" as well as the indices to recorded maps, plats, etc. R. S. chap. 115, sec. 12.

By the fifth paragraph of that section of the statute, however, the recorder is also directed to keep "when required by the county board, an abstract book which shall show by tract every conveyance and incumbrance recorded," with date of instrument, time of filing it and book and page where recorded; "which book shall be so kept as to show a true chain of title to each tract and the incumbrances thereon as shown by the records of his office." In Cook county such requirement has been made. The abstract book thus provided for is apparently a tract index and is described in Warvelle on Abstracts (p. 83, sec. 8) as follows: "The tract index occupies much the same position in the abstract office that the great ledger does in the counting room. It is the receptacle for all the notes of the entry books, where the great mass of each day's transactions is separated, classified and arranged, and exhibits at a glance on its broad pages the balance sheet of all the land titles of the county. It is the foundation stone upon which the entire superstructure of the business rests, and the source from whence the examiner

draws all his primary information in preparing the abstract."
The provision for keeping such "abstract book" or tract index
was not new to the statutes of this state when it was re-adopt-
ed by an Act of 1874 in force July 1 of that year. In that
Act are provisions authorizing the county board in any coun-
ty where abstract books have not previously been kept to pro-
cure such abstract books to be made at the cost of the county,
showing a connected chain of title up to the time of the tak-
ing effect of the Act. These "abstract books" or tract in-
dices, which are, it is said, compilations from the books of
original record, are in part the subject of the present con-
troversy, appellee claiming the right which it is charged the
recorder refuses to allow it to exercise, not only of free ac-
cess to them for inspection and examination, but to take mem-
oranda and abstracts and to make abstract books therefrom
to the fullest extent. The right thus claimed, as stated in the
bill of complaint, is equivalent to making copies of these
books for appellee's own use, thus saving the greater labor
and expense of making the compilations from original
sources.

The bill of complaint alleges that about the year 1875 the
county of Cook purchased certain tract books of Williams
and Thielke, which books covered the period from October
9, 1871, when the great fire of that date destroyed the then
existing records. While the law was as stated, the recorder
of Cook county in February, 1886, by direction of the board
of commissioners, notified a firm of abstract makers in Chi-
cago that thereafter the firm would be denied access to the
original instruments and records of his office for the purpose
of making copies of abstracts for their own private gain.
Said firm filed a bill in the Superior Court and obtained an
injunction against the recorder. This was reversed upon
appeal to this court and it was held that the complainants
were not entitled as a matter of legal right under common
law rules to have access to the original instruments in the
custody of the recorder in order to make abstracts of them
for the purposes of their private business. Scribner v. Chase,
27 Ill. App., 36-42. Pending this suit the legislature amend-

ed the Act of 1874 by an act in force July 1, 1887, adding
section 21 (R. S. chap. 115), which is as follows:

"All records, indices, abstract and other books kept in the
office of any recorder, and all instruments filed for record
therein shall, during office hours, be open for public inspec-
tion and examination; and all persons shall have free access
for inspection and examination to such records, indices, books
and instruments, which the recorders shall be bound to exhibit
to those who wish to inspect or examine the same; and all
persons shall have the right to take memoranda and abstracts
thereof without fee or reward."

At the same session of the legislature an act was adopted
authorizing such recorders as are required by the county
board to keep abstract books, to make and sell abstracts of
title, and fixing the fees and compensation therefor, which
act was approved June 16, 1887, and was in force July 1.
This act authorized and required recorders in the counties so
designated to keep judgment dockets and indices thereto
showing all judicial proceedings affecting title to real estate
in any such county, tax sale books with indices showing sales
or forfeitures for unpaid taxes and assessments, and such
other books as are usual or necessary to be kept for the pur-
pose of making complete abstracts of title to real estate.
The first section contains a proviso as follows: "Provided
that nothing in this act shall be construed to empower the
recorder to prevent the public examining and taking memo-
randa from all records and instruments filed for record,
indices and other books in his official custody, but it shall
be his duty at all times when his office is or is required by
law to be open, to allow all persons without fee or reward to
examine and take memoranda from the same." R. S. chap.
115, sec. 25. The next section authorizes the recorder to
make abstracts of title to real estate for all persons desiring
them and to charge therefor.

When the county undertakes pursuant to the authority so
conferred to make and sell abstracts for compensation "it
does so in the exercise of its private and not of its govern-
mental functions." Wagner v. Rock Island, 146 Ill. 139-

153-4; City of Chicago v. Selz, Schwab & Co., 104 Ill. App. 376-381; City of Chicago v. Town of Cicero, 210 Ill., 290-297. A business so carried on by a municipal corporation or by a county under legislative authority may be in a sense public in its nature because for public advantage, and in another sense private, since it is a business which may be carried on by a private corporation, examples of which are, it is said, the kinds of business carried on by common carriers, telegraph companies and gas companies. Chicago v. Cicero, *supra.* It is evident that if appellee, preparing to engage in the business of making and selling abstracts for its own emolument, can avail itself of the work done by the county in the capacity of a private corporation, and instead of making its own compilations and abstract books, which the bill states "require for their preparation a large force of men and years of time" at a very considerable expense, can without compensation simply copy abstract and other books made by the recorder for making and selling abstracts, and from the material thus acquired make and sell abstracts itself in competition with the county, it will acquire a valuable property without compensation which has cost the county a large sum of money. This would include not only compilations made by the recorder from the records of his own office, but judgment dockets and tax sale and other books with their indices made from other records, the making of which according to the bill of complaint requires search in "every collector's office in every township in the County of Cook," as well as an examination of the records in the office of the city clerk and the clerks' offices of every court of record, State and Federal, in the county.

Stress is laid in the bill upon the alleged fact that the Chicago Title and Trust Company has a monopoly outside of the competition of the recorder, of the abstract business in Cook county, although it charges more than the recorder for the same service; and it is alleged that the people of Cook county are interested in having appellee become "a real and active competitor" of said Chicago Title and Trust Company, and that such competition will be a benefit to the

people. It does not, however, follow from anything in the record that the proposed competition by appellee will be of benefit to anyone other than itself and its stockholders. For aught that appears it may itself enter into combination with the alleged existing monopoly or sell out to it; but whether so or not, we are unable to discover any bearing of the allegations referred to upon the real question to be determined. That question, as we look at it, is whether appellee has the right to make copies of the compilations made by the recorder contained in abstract books of tract indices, of the judgment dockets and indices thereto showing all judicial proceedings affecting title to real estate in Cook county, of the tax sale books with indices thereto showing sales or forfeitures of all lands in the county for unpaid taxes and assessments, and of such other books as are usual or necessary to be kept for the purpose of making complete abstracts of title to real estate. If appellee has such right it is owing entirely to the statute. As before intimated, appellee would have no such right at common law. Scribner v. Chase, *supra,* and cases cited. In Meachem on Public Offices and Officers, chap. 6, sec. 739, it is said: "The duty of the Recorder to permit extracts and copies of the records of his office to be made, being confined to those who have a special interest in some particular chain of title, it is well settled that unless required to do so by statute as in some states, the Recorder will not be compelled to permit parties having no such special interest to make general abstracts of title for the purpose of afterward furnishing as a business enterprise the information so acquired to persons who may desire it."

As before stated, section 21 of chapter 115 of the Revised Statutes is an amendment added to the act of March 9, 1874, by an act approved May 31, 1887. By its terms "All records, indices, abstract and other books" and instruments filed for record are required to be open for public inspection and examination, and all persons "have the right to take memoranda and abstracts thereof without fee or reward." This provision undoubtedly refers to the "abstract and other books" referred to in sections 12 and 19 of the act thus

amended. (Chap. 115.). The words "other books" by the rules governing the interpretation of statutes are to be regarded as meaning books of the same kind as those specially enumerated, including the abstract books or tract indices. Stites v. Wiggins Ferry Co., 97 Ill. App. 157-159; Matter of Swigart, 119 Ill. 83-89. As to these books, it is clear that appellee and "all persons" are by that amendment entitled to "take memoranda and abstracts" of them fully and freely. The right, however, to take memoranda and make an abstract does not necessarily include a right to make a substantial copy of an abstract book or tract index. To give the language used that meaning, would be to put into the statute by construction what the law-makers have left out. It is a general rule in the construction of statutes that they are not to be construed as changing the common law further than by their terms they expressly declare. Canadian Bank v. McCrea, 106 Ill. 281-289; Mackin v. Haven, 187 Ill. 480-493. We are not at liberty, therefore, to extend the meaning of the words employed in the statute, nor to speculate upon what may have been the intention of the legislature. State Board of Health v. Ross, 191 Ill. 87-92. The purpose as expressed evidently is to allow all persons the right to inspect and examine the books referred to, to take any memoranda from them, and to make abstracts if so desired of any of the entries therein contained, and that is all. The language used does not, in our opinion, include the right to go further and make substantial copies of entire books, to do which would require such temporary exclusive possession and monopoly as might very well interfere with the use of the volumes by the recorder or the general public.

At the same session of the legislature, but later (Act approved June 16, 1887, in force July 1, 1887), the Act was passed expressly authorizing recorders in counties where they shall have been required by the county board to keep the tract indices described in the statute and called abstract books, to go into the business of making and selling abstracts of title to real estate. In the first section of the act (R. S. chap. 115, sec. 25), authority is given and the recorder is

required, as we have seen, to keep judgment dockets and indices showing judicial proceedings affecting title to real estate, tax sale books showing sales and forfeitures and other books usual or necessary for making complete abstracts of title. It will be noted that the proviso in this section is to the effect that nothing in the act shall be construed to empower the recorder "to prevent the public from examining and taking memoranda from all records and instruments filed for record, indexes and other books in his official custody," that is "other books" of the kind enumerated, and it is made his duty to allow, all persons to examine such records and books and take memoranda from them. The proviso is in substance a mere repetition of the requirements of section 21 of the prior enactment. The new books authorized to be kept by this section one of the later act are not kept by the recorder in his strictly official capacity as a public officer, but in his private capacity as a competitor with private persons in the business of abstract making for compensation. A public office is defined as "the right, authority and duty created and conferred by law by which for a given period an individual is invested with some portion of the sovereign functions of the government to be exercised by him for the benefit of the public." Meachem on Public Offices and Officers, sec. 1. The business of abstract making is not carried on by the county recorder in the exercise of any of the sovereign functions of government but in the use of powers as a private corporation specially conferred by the legislature, which are, however, impressed with a public use because conferred for the public advantage. City of Chicago v. Selz, Schwab & Co., *supra*. It may well be doubted whether the new books authorized or required by the section we are considering and which are provided for to be used solely for making abstracts of title to real estate for sale to private persons are in the recorder's "official custody" as a public officer within the meaning of the words used in this statute. They are not "abstract books" within the meaning of section 21 above quoted. The abstract books there referred to are defined in the fifth paragraph of the preceding section 12 of the Act of

1874 to which act section 21 is an amendment. By that definition an "abstract book" is, as we have said, nothing more nor less than a tract index. The new books authorized by the first section of the later act are not made from any records in the recorder's possession. They are compilations from records of the courts and from other records which are as open to the general public and to appellee as they are to the recorder. They can be called abstract books only in the sense that they are used in the business of making abstracts for sale, and they differ in character from "records and instruments filed for record, indexes and other books in his official custody" enumerated in the proviso to that first section of the act under consideration approved June 16, 1887. They are not books necessarily or usually kept by a recorder. They have no relation to the duties of the recorder as a strictly public officer. They are not records in any proper sense, and so far as we can perceive are not required by the statute to be exposed to the examination of persons desirous of taking memoranda and abstracts thereof.

It follows from what we have said that the interlocutory order granting the injunction in controversy is erroneous, and it must be reversed and the cause remanded for proceedings not inconsistent with the views expressed.

*Reversed and remanded.*