E. A. CHALSTRAN, Appellee, *vs.* THE BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT 13, ETC., Appellant.

*Opinion filed April 21, 1910.*

1. SCHOOLS—*election to discontinue township high school may be held a year after its establishment.* The fact that a township high school has been established only a year does not preclude the holding of an election to discontinue it, and if a majority of the votes at such election are in favor of discontinuance, it is the duty of the trustees to discontinue the same in accordance with section 44 of article 3 of the School law.

2. SAME—*township board of education has power to settle affairs of discontinued high school.* Where a township high school is discontinued by vote of the people the board of education continues in existence for the purpose of settling the affairs of the high school district before turning over the assets to the school fund of the township or townships interested, and such board may be sued, after the vote to discontinue the district, to enforce an obligation previously incurred.

3. SAME—*right of building contractor to recover loss of profits after discontinuance of high school.* One who has contracted with the board of education of a township high school district to construct a high school building may, upon such high school being discontinued by vote of the people, cease work on the building without notice or request from the board of education and recover for loss of profits in an action of assumpsit against such board.

4. SAME—*taxes collected for high school district are subject to payment of its liabilities.* Taxes levied for the purpose of a township high school district and which have been collected and are in the hands of the township treasurer are subject, with other assets, to the payment of legal obligations of the high school district, including judgments recovered after the discontinuance of the district, upon legal obligations previously incurred.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Knox county; the Hon. ROBERT J. GRIER, Judge, presiding.

This is an action of assumpsit brought in November, 1907, in the circuit court of Knox county, by E. A. Chalstran, appellee, against the Board of Education of Township High School District 13, range 1, east, Knox county, Illinois, appellant. On March 2, 1906, appellee entered into a written contract with said board to build a high school building for $4560. Before that date a petition had been filed for an election to vote for or against the discontinuance of said township high school. Appellee knew of this petition at the time he executed the contract. At the election held on April 2, 1906, it was voted to discontinue the school. Appellee, between the date of the making of the contract and the holding of the election, had excavated for the basement, partially constructed the basement walls and brought a part of the material for the building onto the ground. The day following the election he abandoned his work on the high school, taking away all his material except the bricks and mortar already laid. He did this without notice from or on behalf of the board of education and without any request from the board that he should delay or stop the construction of the building. The trial court, under the declaration, restricted the proof to the loss of his profits on the contract and the jury awarded appellee a verdict of $500. The judgment entered on this verdict was

affirmed by the Appellate Court, and that court has granted a certificate of importance.

By agreement a stipulation as to the facts and questions of law involved, taking the place of the evidence, instructions and rulings in the trial court, was entered into by the parties prior to the appeal to the Appellate Court. The latter court decided the case on that stipulation, and it forms also the record brought to this court for review. This agreement set out the facts, of which the parts material to this decision are given above, and further stipulated "that if, under the facts as stipulated and set out herein, the plaintiff, under the law, by reason of the votes cast at said election, April 2, 1906, had the legal right to on April 2, 1906, and thereafter, cease and fail to further carry out his contract, and under the facts herein stipulated is entitled to recover in this suit his said profit of $500 which would have accrued to him had he fully completed the construction of said building according to contract, the judgment in this case shall be affirmed, otherwise reversed and a judgment entered for defendant."

CARNEY, CARNEY & FRANK, for appellant.

R. D. ROBINSON, (ARMOUR MORELAND, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

It is conceded that the vote to discontinue the high school district was taken in accordance with the law, the sole question in dispute being as to the effect of that vote. Section 44 of article 3 of the School law, (Hurd's Stat. 1908, p. 1920,) after providing for the canvass of the ballots in an election held as to the discontinuance of a high school, reads: "If the majority of the votes at such election shall be found in favor of discontinuing the high school, it shall be the duty of the trustees to discontinue

the same, and turn all the assets of the said high school over to the school fund of the township or townships interested therein, in proportion to the assessed valuation of said townships, to be used as any other township fund for school purposes." This law was in force at the time said vote to discontinue was taken. It is practically the only section of the statute which has a direct bearing on the closing up of the affairs of a high school district so discontinued.

Public corporations are but parts of the machinery employed in carrying on the affairs of the State, and they are subject to be changed, modified or destroyed, as the exigencies of the public may demand. (*Trustees of Schools* v. *Tatman,* 13 Ill. 27; *Amy* v. *Watertown,* 130 U. S. 301.) The legislature has supreme power over them, and may divide, alter, enlarge or abolish them, as in the legislative judgment the public welfare may require. (*City of Chicago* v. *Town of Cicero,* 210 Ill. 290; *Town of Cicero* v. *City of Chicago,* 182 id. 301; *People* v. *McBride,* 234 id. 146.) Municipal corporations can only be dissolved through legislative authority. (1 Dillon on Mun. Corp.—4th ed.—168.) But the legislative authority over municipal corporations is not in all respects unlimited. That authority is regulated and controlled by the provisions of the national and State constitutions. (1 Dillon on Mun. Corp.—4th ed.—sec. 65.) The rights and franchises of municipal corporations, being granted for purposes of government, are not such vested rights, as against the State, that they cannot be taken away, nor does the charter of a municipal corporation constitute a contract in the sense of the constitutional provision which prohibits the obligation of contracts being violated. (Cooley's Const. Lim.—7th ed.—266.) While the charter itself can be modified or abolished, if a municipal corporation has become indebted under its charter, the rights of a creditor based upon the obligation of a contract cannot be impaired by any subsequent

legislative enactment. 1 Dillon on Mun. Corp. (4th ed.) secs. 63, 69; *Wolf* v. *New Orleans,* 103 U. S. 358; *Milner's Admr.* v. *Pensacola,* 2 Wood, (U. S. Cir. Ct.) 662.

The record shows that the high school district in question had been established only a year previous to the date of the vote to discontinue. Counsel for the appellant insist that the legislature could not have intended that these two votes were to be taken within a year, and that a fair construction of the law does not require the high school district to be abolished as soon as the vote to discontinue is taken. They argue that if a high school is being conducted, the legislature must have intended that it should continue until the end of the then current school year. Beyond question, under the authorities, the legislature could make such conditions as appellant contends it did make by the existing laws. But no such conditions are found in the statute. The statute only provides that on the vote being canvassed the high school shall be discontinued and the assets turned over to a certain fund.

Appellant further argues that if the effect of this vote was to abolish the high school immediately, then it must necessarily follow that the part of the contract which was not completed, if not binding upon both parties, could not be binding on either. Appellant insists that section 44 of the School law was in force at the time the contract was entered into and had become a part of it. (*Barrett* v. *Boddie,* 158 Ill. 479; Abbott on Mun. Corp. sec. 88.) Appellee knew, at the time he entered into this contract with the high school board, of the legislative provision authorizing the discontinuance of the district. If, fairly construed, this statute shows that the legislative intention was as contended for by appellant, then such intention must be carried out unless it be in contravention of the State or Federal constitution. The same obligation to perform contracts rests upon a municipal corporation as upon a natural person, unless a plain, clear provision in the charter provides

otherwise. The statutory provision referred to authorized the high school to be discontinued; but is it to be presumed, on the wording of this statute, that the legislature intended to absolve the district from this liability to contractors or creditors whose rights had become vested? Such a law, conceding that the legislature has the constitutional right to enact it, would place persons contracting with municipal corporations on a basis so insecure that few would care to enter into municipal contracts. *Morris & Cummings* v. *State,* 62 Tex. 728.

Counsel for appellee contend that the same rule applies to this contract after it was repudiated by the vote of the people as would apply to an ordinary contract between individuals,—that is, they claim that the injured party has the right to pursue either of three remedies: First, to treat the contract as rescinded and recover upon a *quantum meruit* so far as it has been performed; or, second, to keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform it, and at the end of the time specified sue and recover under the contract; or, third, to treat the repudiation as putting an end to the contract for the purposes of performance and sue for the profits he would have realized if the contract had been completed. (*Lake Shore and Michigan Southern Railway Co.* v. *Richards,* 152 Ill. 59; *Wells* v. *National Life Ass'n of Hartford,* 53 L. R. A. 33, note *b;* 99 Fed. Rep. 222.) We have seen no authority that passes on the precise question here involved. In *Potts* v. *Supervisors,* 25 Wis. 506, the court held that the repeal of a statute rendered nugatory an executory contract. The United States Supreme Court has held that section 10 of article 1 of the United States constitution, prohibiting any State from passing a law impairing the obligation of contracts, applies as well to executory as executed contracts. (Cooley's Const. Lim.— 7th ed.—p. 384.) Said section 44 of the School law, as we have seen, became a part of this contract at the time

of its execution. In this case appellee recovered only for the profits that he proved he would have realized had he completed the contract. We do not find it necessary to consider or decide whether he would have been entitled, under the contract and statute, to go ahead and complete the high school building and then recover for the full amount. It is proper, however, to state that wise public policy would seem to sanction the course that was pursued. After the high school district was discontinued a completed high school building would be of little value to the township. Appellee's right to profits in this contract should not be taken from him without his consent, unless the right to do so is reserved in the contract or in the law, which is necessarily a part of the contract. (Cooley's Const. Lim.—7th ed.—p. 392.) Ordinarily the State is liable for prospective profits, on breach of contract, to the same extent as an individual. (*Masterton* v. *Mayor,* 42 Am. Dec. (N. Y.) 138, and note; *Danolds* v. *State,* 89 N. Y. 36; 26 Am. & Eng. Ency. of Law,—2d ed.—p. 478, and cases there cited.) If under this provision of the statute it was intended that appellee should have no right to the profits for that part of the contract which he had not completed, then his right to such profits would not be vested. We do not think it was so intended. Considering the various provisions of the High School law, we are disposed to hold that under the present wording of the statute, fairly construed, the high school district was liable, even after the vote to discontinue, for the profits that would have accrued to appellee had he completed his contract.

The question still remains whether the action should have been brought against the board of trustees of the former high school district or against some other school official or board. Was the high school district absolutely abolished as soon as the vote was taken and canvassed? This court has held that the effect of the dissolution of a municipal corporation by *quo warranto* proceedings was to

destroy it as a public institution; that thereafter it could neither sue nor be sued, convey property or make further contracts. (*Dodge* v. *People,* 113 Ill. 491.) It has also been held that the absolute repeal of a charter destroys all officers under it and puts an end to the tenure of office of the incumbents. (*Crook* v. *People,* 106 Ill. 237; *People* v. *Brown,* 83 id. 95; 28 Cyc. 256, and cases cited.) Whatever the legislative intention with reference to the transactions into which said high school district has entered and which were then authorized by law, it was not intended that the high school authorities, after the vote to discontinue, could originate new business, except that necessary to close up the affairs of the district. (*Greenwood* v. *Freight Co.* 105 U. S. 13.) The legislature has provided by statute how private corporations shall close up their business affairs, and has specifically stated that such corporations shall be capable of prosecuting and defending suits, and that all remedies against such corporations, their stockholders or officers, for liabilities incurred previous to the dissolution, shall not be taken away or impaired. (Hurd's Stat. 1908, chap. 32, secs. 10-12, p. 526.) The legislature could have made the same specific provisions with reference to municipal corporations, but it has not done so. It has been held that where public corporations have been absolutely dissolved without making any provision for the payment of their obligations, and where no municipal successor has been created, a creditor has only the faith of the legislature upon which to rely. (*Barkley* v. *Levee Comrs.* 93 U. S. 258; *Bates* v. *Gregory,* 89 Cal. 387.) Yet this conclusion is reached by the courts with great reluctance and only when no other possible construction can be placed upon the legislation. Municipalities may have their boundaries modified, their names changed or one may be merged in another, or they may be divided and portions of their territories annexed, but it will be presumed that the legislature intended that the liabilities as

well as the rights of property of the corporation shall accompany it into the jurisdiction of the territory which annexes or incorporates it. (*Mt. Pleasant* v. *Beckwith,* 100 U. S. 514; *Shapleigh* v. *San Angelo,* 167 id. 646.) If the changes do not amount to an absolute dissolution, the remedies necessary for the collection of the debt of the creditor will remain in force. (*Mobile* v. *Watson,* 116 U. S. 289.) Where the rights of creditors are involved, the presumption is extremely strong that the identity of the corporation continues, notwithstanding different powers are possessed by the new organization and different officers administer its affairs. (1 Dillon on Mun. Corp.— 4th ed.—sec. 172.) If there are in existence any assets in the hands of public officials and there are no remedies at law by which creditors can enforce the payment of obligations from such assets, courts of equity will take jurisdiction and direct the application of the taxes so collected to the use for which they were levied. "The ancient doctrine, that upon the repeal of a private corporation its debts were extinguished and its real property reverted to its grantors and its personal property vested in the State, has been so far modified by modern adjudications that a court of equity will now lay hold of the property of a dissolved corporation and administer it for the benefit of its creditors and stockholders. The obligation of contracts, made whilst the corporation was in existence, survives its dissolution, and the contracts may be enforced by a court of equity so far as to subject, for their satisfaction, any property possessed by the corporation at the time. In the view of equity its property constitutes a trust fund pledged to the payment of the debts of creditors and stockholders, and if a municipal corporation, upon the surrender or extinction, in other ways, of its charter, is possessed of any property, a court of equity will equally take possession of it for the benefit of the creditors of the corporation." *Brough-*

*ton* v. *Pensacola,* 93 U. S. 266; *Meriwether* v. *Garrett,*
102 id. 472; *O'Connor* v. *Memphis,* 74 Tenn. 730.

It appears from the stipulation of facts that the taxes
for the high school district levied for 1905 have been col-
lected and are in the hands of the township treasurer, the
proper official to hold them for the high school district
when it was in existence and the proper official to hold
them for the present public authorities. We think these
taxes, and other assets, if any, of the high school district,
are properly subject to the payment of the legal obliga-
tions of said high school district.

Did the legislature, by the act here in question, author-
ize the high school officials to close up its affairs? Said
section 44 provides that after canvassing the vote, if found
to be in favor of discontinuance, it shall be the duty of the
trustees to discontinue the high school and turn all the
assets of said high school over to the school fund of the
township or townships interested therein, in proportion to
the assessed valuation of the townships. In this case the
high school district was in one town and the duty of turn-
ing over the assets would be comparatively simple, but if
the high school district were formed of two or more town-
ships or parts of townships, and had property, not in
money, belonging to it, such as a high school building,
then it would be necessary, before the assets could be di-
vided among the various townships in proportion to the
assessed valuation of such townships, that the trustees dis-
pose, in some way, of the property. We think the leg-
islature intended by this statute that the trustees of the
township high school should not only have the power to
divide the assets, but in order to divide them proportion-
ately they should previously settle all liabilities against the
high school district. If this be the fair construction of the
statute, then, necessarily, the high school district could sue
and be sued after the vote in favor of discontinuance. The
funds collected for the purpose of building this high school

are properly in the hands of the township treasurer of the township in which the former high school district was located. They are, however, subject to the payment of this judgment in like manner as they would be if the district were still in existence.

The board of education of the former township high school district was the proper defendant in this case.

The judgment of the Appellate Court must therefore be affirmed.

*Judgment affirmed.*