School Directors of District No. 175, Ogle County, Illinois, Defendants in Error, v. School Directors of District No. 173, Ogle County, Illinois, Plaintiffs in Error.

## Gen. No. 7,759.

1. Schools and education—*requirements for transferring part of one district to another.* Under Cahill's St. ch. 122, ¶¶ 46 and 52, the giving of written notice and service of a copy of the petition for transferring part of one district to another on the president or clerk of the boards of school directors of the districts affected is necessary to give the school trustees jurisdiction to act on the petition.

2. Certiorari—*discretion in issuance.* The common-law writ of certiorari is not a writ of right but can only issue for cause shown on

application to the court which will grant or refuse it in the exercise of a sound judicial discretion.

3. CERTIORARI—*public detriment or inconvenience as ground against issuance.* When great public detriment or inconvenience will likely follow interference with proceedings of local inferior tribunals of interest to the public, a writ of certiorari should not issue, or if improvidently issued should be quashed.

4. CERTIORARI—*time limitations on issuance.* No statute of limitations applies to the issuance of the common-law writ of certiorari, but the time fixed for suing out writs of error has been declared by the Supreme Court to be the limit for such issuance in case public detriment would result if the writ issued thereafter.

5. CERTIORARI—*time limitations to question transfer of part of school district.* Proceedings of school authorities in transferring part of one school district to another, if no changes damaging the public interests would follow a quashing thereof, can be quashed for irregularities at any time.

6. SCHOOLS AND EDUCATION—*right of one district to question its partial transfer to another.* A school district, as a public corporation of legislative character, is not estopped merely from lapse of time from asking that the record of school trustees transferring part of it to another district be quashed, if no public harm has resulted from such delay.

7. SCHOOLS AND EDUCATION—*how existence of district questioned.* As a public corporation a school district, unless divided in compliance with statute, can have its existence called in question only by direct attack through *quo warranto* proceedings.

8. MUNICIPAL CORPORATIONS—*how existence terminated.* Failure of a municipal corporation to exercise its functions for some years will not terminate its existence, since that can follow only on legislative consent or in compliance on legislative provisions.

9. MUNICIPAL CORPORATIONS—*legislative authority over.* The legislature has control over municipal corporations and may change, modify, restrict or abolish them to suit exigency.

Error by defendants to the Circuit Court of Ogle county; the Hon. WILLIAM J. EMERSON, Judge, presiding. Heard in this court at the April term, 1927. Affirmed. Opinion filed September 24, 1927.

ROY F. HALL, for plaintiffs in error.

SEYSTER & FEARER, for defendants in error.

MR. JUSTICE BOGGS delivered the opinion of the court. A petition for a writ of certiorari to quash the

records of the trustees of schools, changing the land of one Frank A. Drager from District 175 to District 173, was filed in the circuit court of Ogle county. A motion was made by respondents to quash said writ, and on the hearing the court refused to quash the writ, but entered an order quashing the record of the proceedings of said School District 175. To reverse said judgment, this writ of error is prosecuted.

The return to the writ shows that Frank A. Drager, in March, 1919, filed his petition with the Trustees of Schools of Monroe Township, Illinois, stating that he was a resident of Monroe Township and owner of certain lands, described in his petition, located in School District No. 175, and praying that these lands be transferred from that school district to School District No. 173; that said trustees of schools had a meeting April 17, 1919, but so far as the records show no action was taken on said petition. The county clerk of Ogle county transferred said lands on the tax books from District 175 to District 173, and that in extending taxes thereon they have ever since been treated as in District 173, but the basis therefor is not shown in the records of said school district or otherwise.

Section 46, chapter 122, Cahill's Statutes, provides for the detaching of territory from one school district and adding it to another, but provides, in order that this may be done, among other things, being subdivision 3 of said section 46: "To detach territory from one district and add the same to an adjacent district, when petitioned by a majority of the legal voters of each district; or, when petitioned by two-thirds of the legal voters residing within the territory described in the petition, asking that such territory be detached from one district and added to an adjacent district."

Section 52 provides: "No petition shall be acted upon by the trustees of schools unless such petition shall have been filed with the clerk at least twenty days before the regular meeting in April, nor unless a copy

of the petition, with a notice in writing signed by one or more of the petitioners, shall be delivered by the petitioners, or one of them, at least ten days before the day on which the petition is to be considered, to the president or clerk of the school directors of each district whose boundaries will be changed if the petition is granted.''

There is no claim or showing that Drager was a resident or legal voter in District 175, or a resident on the land sought to be detached at the time of filing said petition, and there was no evidence or claim that any notice of the filing of said petition or the hearing thereof had ever been given to any of the school directors of District 175. The evidence offered on the hearing was to the effect that Drager was not then a resident of District 175, or a resident on the lands petitioned to be changed.

The giving of the above notice and the serving of a copy of the petition upon the president or clerk of the board of school directors of the districts affected is necessary to give the trustees jurisdiction to act upon the petition. *Board of Education of Glencoe v. Trustees of Schools,* 174 Ill. 510–511; *People v. Feicke,* 252 Ill. 414–417; *People v. Jones,* 254 Ill. 521; *Ebeling v. Trustees of Schools,* 285 Ill. 641–646.

Counsel for plaintiffs in error practically concede that the record here in question is not sufficient to effect a transfer of the lands of Drager from District 175 to District 173; the language of counsel in this connection, as contained on page 6 of his brief, being as follows: ''It may be that the record of the trustees of schools is not sufficient to act as a transfer of the land from District 175 to 173, but it was a record of an attempted transfer from one district to another.''

Counsel insists, however, that by reason of the lapse of time and the effect that the quashing of said record may have on the districts in question, that this cause should be reversed and said writ be quashed.

A common-law writ of certiorari is not necessarily a writ of right, but the discretion to be exercised by a court in refusing the same is not an arbitrary one. In *Clark v. City of Chicago,* 233 Ill. 113, the court in discussing this question at page 114 says: ''It has often been held by this court that the common law writ of *certiorari* is not a writ of right, and issues only upon application to the court and for special cause. (*Trustees of Schools v. School Directors,* 88 Ill. 100.) The reason of this rule is said to be that the inferior tribunals to which said writ issues exercise powers in which the people at large are interested, and that great detriment or inconvenience might result if the writ were inadvertently issued and the powers exercised by said tribunals improperly interfered with; (*People v. Supervisors,* 15 Wend. 198;) and when a great public detriment or inconvenience is likely to result from interfering with the proceedings of an inferior tribunal the common law writ of *certiorari* should not issue, and if the writ is issued improvidently, upon the facts being presented to the court the writ will be quashed. *Board of Supervisors v. Magoon,* 109 Ill. 142; *Commissioners of Drainage District v. Griffin,* 134 id. 330.''

There is nothing in the record in this case showing or tending to show that any public inconvenience will be suffered by the quashing of the record of the proceedings in connection with the changing of said lands. No debts have been incurred, so far as the record discloses, by District 173 by reason of the purported change of said lands to it. The most that the record shows is that since 1919 said lands have been levied upon and taxed as a part of District 173. The question then arises as to whether mere lapse of time, as contended by counsel for plaintiffs in error, is sufficient to bar a certiorari proceeding in a case of this character.

There is no statute of limitations which applies to common-law writs of certiorari. Our Supreme Court

has in many cases applied to such proceedings the time fixed for the suing out of writs of error. *Clark v. City of Chicago, supra* 114; *Schlosser v. Commissioners of Highways,* 235 Ill. 214; *Fisher v. McIntosh,* 277 Ill. 432–435.

But in *Jackson v. Blair,* 298 Ill. 605, the court specifically held that the time in which common-law writs of certiorari may be brought in cases of this character is not governed by the time fixed for suing out writs of error. In that case the court had before it a certiorari proceeding in which the petition for the writ was not filed until practically two and one-half years after the petition for detachment was filed. On page 607 of the opinion the court, in discussing this question, says:

"That the petition for the writ of certiorari was not filed until September, 1920, practically two and a half years after the first petition for detachment was filed before the board in Stark county, and more than two years after the filing of the other petitions, and that therefore, under the reasoning of this court in *People v. Burdette,* 285 Ill. 48, and the authorities there cited, the delay was such as to deprive appellants of the right to a review in this court.

"There can be no question, under the reasoning of *People v. Burdette, supra,* and authorities there cited, that the delay would bar the hearing by this court if this were same sort of a case as was there under consideration, but that case involved the holding of a position under the Civil Service law, and this court by various decisions, notably *Clark v. City of Chicago,* 233 Ill. 113, had established a rule that in that class of cases the review must be brought by *certiorari* within six months or the action would be barred by *laches.* * * * In the quite recent case of *Fisher v. McIntosh,* 277 Ill. 432, the doctrine of the *Schlosser case* was approved with reference to review proceedings as to the boundaries of school districts under *certiorari,*

and it was said that the doctrine of *laches* had no application in those cases, and that the period of limitation named in the *Clark case* would not apply to writs of error to review proceedings 'where nothing has been done, as in these cases, by the public authorities which will cause great public detriment or inconvenience in case the proceedings are quashed.' This record does not indicate such public inconvenience or detriment as would require the quashing of these proceedings; we do not think the doctrine of *laches* can be invoked to prevent the review of these proceedings.''

The court there held that the record should be quashed, and reversed and remanded the cause.

Counsel for plaintiffs in error have sought to obviate the effect of the holding of the Supreme Court in *Jackson v. Blair, supra,* by attempting to show that the directors and officers of District 175 had actual notice that an effort had been made to detach the lands in question from said district and attach the same to District 173, and that they are therefore estopped to now question the legality of said proceedings. The evidence is conflicting as to whether said directors had such notice. However, we are of the opinion and hold that the preponderance of the evidence supports the finding of the trial court, to the effect that they did not have actual notice thereof. Each of the directors testified specifically that he did not have such notice until a short time before this petition was filed. There being no evidence in the record to the effect that a public inconvenience will be suffered by reason of the quashing of said record, we hold that inasmuch as this is a public corporation, legislative in character, that it should not be estopped to question the legality of the record here involved.

It is also contended by counsel for plaintiffs in error that the court, in determining the questions here involved, should take into consideration the evidence offered by respondents to the effect that for some two

years prior to 1922, no school was maintained in District 175, it being insisted that where no school was maintained, there was a means provided by the statute for dividing up a district of that character.

There is no contention in this case that District 175 was divided; it being a public corporation, unless divided in compliance with the statute, its existence can only be called in question by quo warranto proceedings. Municipal corporations cannot be collaterally attacked. *People v. New York Cent. R. Co.,* 301 Ill. 54–56; *People v. Cleveland, C., C. & St. L. R. Co.,* 305 Ill. 460–466. Municipal corporations can cease to exist only by legislative consent, or pursuant to legislative provisions, and a failure for a term of years to exercise the functions of a municipality does not effect a dissolution. *People v. Niebruegge,* 244 Ill. 82–86. Municipal corporations are subject to legislative control, and may be changed, modified, restricted or abolished to suit the exigencies of the case. *City of Chicago v. Town of Cicero,* 210 Ill. 290.

For the reasons above set forth, the judgment of the trial court will be affirmed.

*Judgment affirmed.*